James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
(973)994-1700

Jonathan D. Selbin
Jason L. Lichtman
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th fl.
New York, NY 10013-1413
(212) 355-9500

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW JORDAN and LISA SAGHY, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO., LTD.,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Matthew Jordan and Lisa Saghy (together "Plaintiffs") by way of Complaint against Defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (together "Samsung") allege as follows:

1.      Samsung designs, manufactures, markets, advertises, sells, warrants, and services refrigerators that pose unreasonable risks of property damage and serious personal injury during

normal use ("Refrigerators"). The Refrigerators span several model numbers, but they all share a common design: double French doors with a bottom freezer.

2.      The Refrigerators are defective because they run above the temperature at which food can be safely stored. This defect is fatal to the operation of the Refrigerators, which serve one purpose: keeping food and other consumable goods at a safe temperature.

3.      A refrigerator that fails to keep food at a safe temperature has no value because it cannot be used safely. In the alternative, the Refrigerators have far less value than promised at the point of sale (i.e., a refrigerator prone to storing food at an improper temperature is less valuable than one that can store food at a safe temperature).

4.      The below allegations are based upon personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## THE PARTIES

### I.      Plaintiffs

#### 1.      Matthew Jordan

5.      Plaintiff Matthew Jordan is a resident of Laguna Hills, California.

6.      Jordan purchased a Samsung Refrigerator (Model Number: RS22T5201SG/AA; Serial Number: 0B2E4BAN800580W) on June 29, 2020 from Home Depot via the internet.

7.      As an authorized retailer of Samsung Refrigerators, Home Depot acted as Samsung's agent in selling Jordan his refrigerator.

8.      Jordan purchased the refrigerator new, and it was delivered in pristine condition without perceivable damage or defect. He paid $1,298.00 for the Refrigerator.

9.      Jordan used the above-referenced Refrigerator solely for its intended purpose as a personal home appliance.

10.     After a few months, Jordan noticed that some of the food in the bottom of the refrigerator was frozen. Jordan attempted to change the temperature settings so that the food at the bottom would not freeze, but this did not work. Jordan also noticed that the top of the refrigerator was at a temperature that was too high to be safe for food storage.

11.     Using a thermal imaging camera, Jordan took photographs that reveal the unsafe temperature variation inside the refrigerator:





12.     On January 14, 2021, a Samsung technician came to Jordan's home to repair the refrigerator's system board. When the technician replaced the system board, he and Jordan noticed scorch marks over the back of the refrigerator. Since the technician replaced the system board, the refrigerator has continued to fail to maintain a safe temperature. Samsung has otherwise refused to repair or replace Jordan's defective refrigerator.

### 2.     Lisa Saghy

13.     Plaintiff Lisa Saghy is a resident of Gettysburg, Pennsylvania.

14.     Saghy purchased a Samsung Refrigerator (Model Number: RF263TEAESG/AA; Serial Number: 0AJD4BBJ805035A) on December 10, 2017 from Lowes in Hanover, Pennsylvania.

15.     As an authorized retailer of Samsung Refrigerators, Lowes acted as Samsung's agent in selling Saghy her refrigerator.

16.     Saghy purchased the Refrigerator new, and it was in pristine condition without perceivable damage or defect. She paid $2,256.71 for the refrigerator.

17.     Saghy used the above-referenced Refrigerator solely for its intended purpose as a personal home appliance.

18.     In January 2022, Saghy started noticing that food and drinks did not seem to be as cold as they used to be in her fridge and noticed ice forming on the back panel.

19.     In March 2022, Saghy called Samsung and requested they send a technician to inspect her fridge, which had ice build-up in the pockets of the cooling panel on the back of the refrigerator and thus failed to keep her food at a safe temperature. A Samsung technician came to her house on March 22. After inspecting the refrigerator, the technician informed Saghy that the cooling panel on the back of the fridge was "totally blown" and the compressor was not working.

He said that the Refrigerator's failure to keep a safe temperature was a known defect that "cannot be fixed."

20.     After the technician failed to fix her defective refrigerator, Saghy continued to ask Samsung for a repair. Around this time, Saghy's father was in hospice care and she had to store his medicine in her Samsung refrigerator. Saghy was concerned about the safety of the medicine, and she expressed these concerns to Samsung's phone representatives. Samsung's representatives did not help remedy this dangerous problem, nor did they seem to care at all about this untenable situation. Saghy's father passed away a week later.

21.     On April 5, Saghy received a text message from Samsung denying her any exchange or refund because her refrigerator was out of warranty. Samsung also informed her that her case had been suspended.

**B.**     **Defendants**

     **1.**     **Samsung Electronics Co., Ltd.**

22.     Defendant Samsung Electronics Co., Ltd. ("SEC") is a South Korean multinational corporation in Seoul, South Korea. SEC designs, manufactures, and distributes Refrigerators for sale in this jurisdiction the Refrigerators. According to samsung.com, SEC's "North America Headquarters" is in Ridgefield Park, New Jersey. SEC also regularly monitors its wholly owned subsidiaries' financial risk arising from operating activities and regularly dispatches financial risk managers to its regional headquarters in the United States.

23.     SEC is and has at all times relevant been in the business of distributing, marketing, promoting, and selling the Refrigerators described herein throughout the United States and in this jurisdiction. SEC purposely directs its conduct toward this District and engages in a continuous course of business in this District, both by intentionally locating its wholly owned subsidiary in

this District and by selling thousands of refrigerators and other consumer goods in this District every year.

### 2.   Samsung Electronics America, Inc.

24.     Defendant Samsung Electronics America, Inc. ("SEA") is a wholly owned subsidiary of SEC. SEA is a New York corporation with its headquarters in Ridgefield Park, New Jersey. SEA warranties products designed, manufactured, and distributed by SEC, and it acts as SEC's agent in the processing of warranty claims related to defects in the manufacturing or materials used by SEC during the manufacturing process.

25.     SEA is and has at all relevant times been in the business of distributing, marketing, promoting, and selling the Refrigerators described herein throughout the United States and in this jurisdiction. SEA resides in and engages in a continuous course of business in this District, and sells tens of thousands of refrigerators and other consumer goods in this District every year.

26.     SEC and SEA are in the business of manufacturing, producing, distributing, and selling consumer appliances, including Refrigerators, to customers throughout the United States, both directly and through its network of authorized dealers.

### JURISDICTION AND VENUE

27.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed Class is a citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

28.     The United States District Court for the District of New Jersey has jurisdiction over Defendants because they reside and transact business in New Jersey, have purposely availed

themselves of the laws of New Jersey, and because many of the specific events giving rise to this action occurred in New Jersey.

29.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendants have marketed, advertised, and sold the Refrigerators, and otherwise conducted extensive business, within this District. In addition, both Defendants' principal place of business is in Ridgefield Park, New Jersey.

## BACKGROUND

### A.     The Refrigerators

30.     The Refrigerators all feature a twin-door design ("French doors") at the top with a freezer drawer at the bottom. The at-issue models include, but are not limited to: RF28HMEDBSR/AA,     RFG298HDRS/XAA,     RF28HDEDBSR/AA,     RF26HFENDSR, RF26J7500SR, and RF27T5201SG

31.     The Refrigerators range in price from approximately $1,000 to $3,000 and come with an express, one-year manufacturer's warranty.

### B.     The Defect

32.     As explained above, this case involves Refrigerators prone to a defect that causes the temperature inside the Refrigerators to rise.

33.     The Refrigerators are defective when manufactured and at the point of sale. Consumers could not reasonably know about the defect at the point of sale and could not discover the defect with a reasonable investigation at the time of purchase or delivery because a reasonable inspection by a consumer would not reveal whether the materials of the Refrigerators, design of the Refrigerators, and/or manufacturing process related to the Refrigerators are defective. The

symptoms of the defects thus manifest only after the point of sale, both within and outside the warranty period unilaterally imposed by Samsung.

C.    **The Warranties**

1.    **Express Warranties**

34.    Samsung provided a uniform, express one-year factory warranty against manufacturing defects and materials and workmanship.  The warranty further protects against defects in the sealed system for five years and defects in the compressor for ten years.

35.    The warranty for the Refrigerators is offered on a take-it-or-leave-it basis, and consumers are not afforded an opportunity to negotiate for more favorable terms in the warranty because of the parties' relative bargaining power.

36.    Although the warranties protect the Refrigerators for many years related to the allegedly defective parts at issue, based upon information and belief, Samsung routinely denies warranty claims based upon the alleged Defects.

2.    **Implied Warranties**

37.    In addition to the express warranty described above, Samsung marketed, advertised, and warranted that the Refrigerators were of merchantable quality and fit for their intended purpose.  Samsung also marketed, advertised, and warranted that the Refrigerators were free from defects and did not pose an unreasonable risk to persons or property. A refrigerator that cannot maintain an appropriate temperature for its content is not fit for its intended purposes and would not pass without objection in the trade.

3.    **Limitations on Express and Implied Warranties**

38.    Federal law mandates that any manufacturer or seller offering a product to customers, whether directly or indirectly, cannot disclaim implied warranties of merchantability and fitness for a particular purpose where that manufacturer has made an express warranty.

Accordingly, such implied warranties apply to Refrigerators sold to Plaintiffs and all Class Members.

### D.    Samsung's Knowledge of the Defects

39.    Samsung knew that the Refrigerators it marketed and sold were prone to not maintaining an appropriately cold temperature, and, therefore, that the Refrigerators were inherently defective, unmerchantable and unfit for their intended use.

40.    Between January 2019 and December 2021, the Consumer Product Safety Commission (CPSC) received over 600 complaints about Samsung Refrigerators.[1] According to *Consumer Reports*, at least "211 complaints specifically cited food spoilage, while 62 complaints cited food poisoning."[2]

41.    The following is a selection of complaints about the Defect that consumers submitted to the CPSC. These complaints demonstrate that Samsung has known about the Defects since 2017 at the latest. The CPSC transmitted all of these complaints to Defendants.

a.    August 20, 2020 (Report Number 20200808-BAD6F-2147370609):

UNSAFE REFRIGERATOR TEMPERATURE - SAMSUNG 18 CUBIC FT. COUNTER DEPTH FRENCH DOOR REFRIGERATOR Manufacture Date: May 2016 Model #: RF18HFENBSR Serial #: 0D6D4ADH501841W Issue: Known Defect – Water pooling/freezing in and under refrigerator crisper drawers In addition to the know defect for all Samsung French Door refrigerators, outlined in a 10/05/2017 Samsung Service Bulletin (Service Bulletin #: ASC20171005001), I have been experiencing significant temperature variances in the refrigerator compartment of my Samsung refrigerator. These temperatures have risen as high as 43 to 44 degrees, which is in the danger zone for safe food storage. In doing research, I have found that my situation is not isolated and Samsung refuses to recall these defective refrigerators.[3]

---

[1] Daniel Wroclawski, *Samsung Refrigerators Cited in Hundreds of Consumer Complaints to Federal Safety Database*, CONSUMER REPORTS (Apr. 8, 2022), https://www.consumerreports.org/consumer-complaints/samsung-refrigerators-cited-in-consumer-complaints-to-cpsc-a1133459149/.
[2] *Id.*
[3] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=2004985

b.      July 1, 2021 (Report Number 20210701-D2EC0-2147363188):

On November 16, 2013 we purchased a Samsung refrigerator from Lowe's Apex, NC (store #0187) for $1,595.91. Model number RFG298HDRS/XAA. This particular model is a 28.5-cu ft French door refrigerator with Dual Ice Maker in stainless steel and has an energy star rating. The refrigerator began making a horrible noise, leaking water, not staying cool, and had ice building up in the back. We called Samsung and they scheduled repairs to be made to our refrigerator. Between April and August of 2017 we had 11 repairs, or rescheduled repairs, for our Samsung refrigerator. All of these repairs were scheduled through calling Samsung, or by the Samsung authorized technicians while they were at our house for further repairs because they were unable to repair the problem. (April 17, April 25, May 11, May 19, June 8, June 15, June 28, July 11, July 12, August 5, August 22.) Our Samsung refrigerator is now doing the same thing again, along with the upper icemaker has stopped working. We have lost hundreds of dollars' worth of food, and thousands of dollars' worth of medication because the refrigerator does not keep its temperature. My husband relies on his diabetic medication, and it became cloudy and no longer effective when kept in the refrigerator. This was an extremely dangerous situation! That, along with our family eating foods not being kept at safe temperatures is negligent on Samsung. Samsung has known about this defect in their product. There are several lawsuits against Samsung regarding this exact issue. This is a defect issue and Samsung needs to fix this issue.[4]

c.      January 17, 2022 (Report Number 20220117-0DAB2-2147357954):

Samsung refrigerator model RF28HMEDBSR does not display correct temperature for refrigerator or freezer. Refrigerator was being used according to the provided manual and was previously in good working order. This caused my family (2 adults and 1 child under 2years) to become ill. Upon putting a thermometer in the fridge it's showed the interior temp was 65 when the control panel showed 36 degrees for the refrigerator and -3 degrees for the freezer. The freezer was 45 degrees. Samsung was contacted and they did not offer to correct or diagnose the issue despite the refrigerator being under warranty. There are numerous stories under the BBB stating other consumers have had this issue with no resolution from Samsung.[5]

42.      In addition, on October 5, 2017, Samsung issued Service Bulletin ASC20171005001. Samsung warned that its French door Refrigerators contained the following issues: "Fan noise that stops when the door is open, or FF section not cooling due to stuck fan (22 E or C), and/or water pooling under the crisper drawers." Samsung advised customers how to

---

[4] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3369324
[5] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3568500

reinstall or replace the evaporator cover, but on information and belief Samsung did not issue a recall of the Refrigerators or make any adjustments to the obviously defective design.

43.     Despite all this knowledge, Samsung has continued selling the defective and unreasonably dangerous Refrigerators without (a) warning consumers of the real possibility that the Refrigerators may be unable to store food at a safe temperature; (b) recalling the defective Refrigerators; (c) offering to repair the defective Refrigerators free of charge; and/or (d) refunding consumers any or all of the purchase price they paid for their Refrigerators.

**E.     Samsung's Concealment of the Defect**

44.     Samsung had a duty to disclose the above-described Defects to Plaintiffs and proposed Class Members, but failed to do so.

45.     Samsung sold the Refrigerators to Plaintiffs and the proposed Class Members and made the warranties and express representations described above with knowledge that the Refrigerators were defective.  Specifically, Samsung knew that the Refrigerators were prone to a defect that causes temperature in the Refrigerators to rise and vary such that it is unsafe to store food and other perishables.

46.     These Defects were not disclosed to Plaintiffs, or other Class Members at the point of sale when they purchased their respective Refrigerators, nor has Samsung disclosed them to Class Members since purchase.  Instead, Samsung has tried to prevent Class Members from learning of the Defects.

**F.     Injuries and Risk of Imminent Harm to Plaintiffs**

47.     Plaintiffs and the other Class Members purchased their Refrigerators solely for their personal, residential purposes and only used the Refrigerators as intended and in accordance with the operating instructions provided by Samsung.

48.     In light of the Defects, Plaintiffs and other Class Members paid far more than the reasonable value of the Refrigerators, and would not have paid such had the Defects described above been disclosed by Samsung.

49.     Samsung has profited and continues to profit from the sale of defective Refrigerators by failing to disclose the above described Defects and continuing to sell the Refrigerators at prices well above their reasonable value.

50.     As a direct and proximate result of Samsung's false warranties, misrepresentations, and failure to disclose the Defects in these Refrigerators, Plaintiffs and the proposed Class have purchased the Refrigerators and have suffered injury as a result.

51.     As a direct and proximate result of Samsung's concealment of the Defects, its failure to warn its customers of the Defects and the safety risks posed by the Refrigerators, and its failure to remove the defective Refrigerators from consumers' homes or otherwise remedy the Defects, Plaintiffs and class members purchased Samsung's defective and unsafe Refrigerators and in many cases use them in their homes to this day.  Had Plaintiffs and class members known of this serious safety risk, they would not have purchased the Refrigerators, would have paid substantially less for their Refrigerators than they paid, and/or would have removed them from their homes before their temperature control functionality failed.

## **CLASS ALLEGATIONS**

52.     Pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), Plaintiffs Matthew Jordan and Lisa Saghy bring this action on behalf of themselves and all other persons similarly situated.  In particular, they seek to represent a nationwide class:

> **Nationwide Class**: All residents of the United States and its territories who purchased a new Refrigerator or otherwise acquired a Refrigerator, primarily for household use and not for resale.

In the alternative, Plaintiffs propose the following State Sub-Classes:

**California and Substantially Similar States Sub-Class**: All residents of California who purchased a new Refrigerator or otherwise acquired a Refrigerator, primarily for household use and not for resale. This subclass includes any state implied warranty claim that is materially identical to California's law of implied warranty, any state express warranty claim that is materially similar to California's law of express warranty, and any state consumer fraud claim that is materially similar to California's law of consumer fraud.

**Pennsylvania and Substantially Similar States Sub-Class**: All residents of Pennsylvania who purchased a new Refrigerator or otherwise acquired a Refrigerator, primarily for household use and not for resale. This subclass includes any state implied warranty claim that is materially identical to Pennsylvania's law of implied warranty, any state express warranty claim that is materially similar to Pennsylvania's law of express warranty, and any state consumer fraud claim that is materially similar to Pennsylvania's law of consumer fraud.

Excluded from the above Class and State Sub-Classes are: Samsung, its officers, directors, and employees, and entity in which Samsung has a controlling interest or which has a controlling interest in Samsung, and that entity's officers, directors, and employees; the judge assigned to this case and his or her immediate family; all expert witnesses in this cause; and, all persons who make a timely election to be excluded from the Class.

A.      **Plaintiffs meet the prerequisites of Rule 23(a)**

53.      **Numerosity**. Upon information and belief, the proposed Class includes many thousands of individuals, and, thus, is so numerous that joinder of all members would be impracticable. In 2019, Samsung accounted for approximately 20.5% of U.S. home appliance sales; that market share rose to approximately 21.6% in the first quarter of 2020. Samsung is also a market leader in refrigerator sales: Samsung refrigerators accounted for approximately 23.7% of refrigerator sales in the United States in the first quarter of 2020. Hundreds of thousands of these particular Refrigerators are currently sitting in Class Members' homes.

54.      **Commonality**. The answers to questions common to the Class will drive the resolution of this litigation.  Specifically, resolution of this case will be driven by questions relating

to the Refrigerators' common design, whether the design is defective, whether the defective design poses a safety risk, Samsung's knowledge of the Defects, the uniform diminution in value of the Refrigerators, and the corresponding unjust enrichment to Samsung.  The common questions of law and fact include, but are not limited to, the following:

        a.     whether the Refrigerators pose unreasonable safety risks to consumers;

        b.     whether Samsung knew, or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

        c.     whether Samsung concealed the safety risks its Refrigerators pose to consumers;

        d.     whether the safety risks the Refrigerators pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

        e.     whether the Refrigerators possess material Defects;

        f.     whether Samsung knew or should have known of the inherent Defects in the Refrigerators when it placed them into the stream of commerce;

        g.     whether Samsung concealed the Defects from consumers;

        h.     whether the existence of the Defects are material facts reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

        i.     whether the Refrigerators are merchantable;

        j.     whether the Refrigerators are fit for their intended use;

        k.     whether Samsung was unjustly enriched by the sale of defective Refrigerators to the Plaintiff class;

l.      whether any false warranties, misrepresentations, and material omissions by Samsung concerning its defective Refrigerators caused Class Members' injuries; and

m.      whether Samsung should be enjoined from further sales of the Refrigerators.

55.     **Typicality**. Plaintiffs have the same interests as all members of the classes they seek to represent, and all of Plaintiffs' claims arise out of the same set of facts and conduct as all other members of the classes.  Plaintiff and all class members own or owned a Refrigerator designed or manufactured by Samsung with uniform Defects.   All the claims of Plaintiffs and Class Members arise out of Samsung's placement of a product into the marketplace it knew was defective and posed safety risks to consumers, and from Samsung's failure to disclose the known safety risks and Defects.  Also common to Plaintiffs and Class members' claims are Samsung's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective Refrigerators, Samsung's conduct in concealing the Defects in the Refrigerators, and Plaintiffs' and Class members' purchase of the defective Refrigerators.

56.     **Adequacy**.  Plaintiffs will fairly and adequately represent and protect the interest of the Class Members: Plaintiffs' interests align with those of the Class Members, and Plaintiffs have no fundamental conflicts with the Class.  Plaintiffs have retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

**B.      Plaintiffs meet the prerequisites of Rule 23(b)(2)**

57.     Samsung has acted and refused to act on grounds that apply generally to the Class, so declaratory relief is appropriate with respect to the entire Class.  Samsung made uniform representations and warranties to the Class as a whole, Samsung concealed facts from and made

material misrepresentations to the Class as a whole, and Samsung has destroyed and may still be destroying evidence relevant to the allegations of the Class.

      **C.**      **Plaintiffs meet the prerequisites of Rule 23(b)(3) and Rule 23(c)(4).**

      58.      **Predominance and Superiority**.   The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable.  Samsung has acted in a uniform manner with respect to the Plaintiffs and Class Members.

      59.      Samsung is a sophisticated party with substantial resources, while Class Members are not, and prosecution of this litigation is likely to be expensive.  Because the economic damages suffered by any individual Class Member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Class Members to seek redress individually for Samsung's wrongful conduct as alleged herein.

      60.      The concealed safety risks described above support swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

      61.      Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Samsung's unlawful and wrongful conduct.  Without a class action, Class Members will continue to suffer the undisclosed risk of spoiled food and perishables and incur monetary damages, and Samsung's misconduct will continue without remedy.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

      62.      There will be no undue difficulty in the management of this litigation as a class action.

63.     Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all class members and materially advance the litigation.

**D.     The proposed Class is ascertainable.**

64.     The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class consists of purchasers and owners of certain Refrigerators, and class membership can be determined using receipts, photographs, ownership documentation, and records in Samsung's and other databases.

**STATUTES OF LIMITATION, FRAUDULENT CONCEALMENT, AND ESTOPPEL**

**A.     Discovery Rule**

65.     The causes of action alleged accrued upon discovery of the defective nature of the Refrigerators.  Because the Defect is latent, and Samsung concealed it, Plaintiffs and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation.  Reasonable and diligent investigation did not and could not reveal a factual basis for a cause of action based on Samsung's concealment of the Defects.

**B.     Fraudulent Concealment**

66.     Any applicable statutes of limitation have been tolled by Samsung's knowing, active, and ongoing concealment and denial of the facts as alleged herein.  Samsung was and is under a continuous duty to disclose to Plaintiffs and the classes the true character, quality and nature of the Refrigerators, particularly that they pose serious risks to public safety, and are at risk of failure.  At all relevant times, and continuing to this day, Samsung knowingly, affirmatively and actively misrepresented and concealed the true character, quality and nature of the Refrigerators and sold the Refrigerators into the stream of commerce as if they were safe for use.  Given Samsung's failure to disclose this non-public information about the defective nature of the

Refrigerators and safety risks to the public information over which Samsung had exclusive control—and because Plaintiffs and Class Members could not reasonably have known that the Refrigerators were thereby defective—Plaintiffs and Class Members reasonably relied on Samsung's knowing affirmative and ongoing concealment.  Had Plaintiffs and class members known that the Refrigerators pose a safety risk to the public, they would not have purchased the Refrigerators.

67.     Plaintiffs and the Class have been kept ignorant by Samsung of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiffs and the Class could not reasonably have discovered the true, latently defective nature of the Refrigerators.

C.     **Estoppel**

68.     Samsung was and is under a continuing duty to disclose to the Plaintiffs and the Class the true character, quality, and nature of the Refrigerators.   Samsung knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Refrigerators, and the concealment is ongoing.  Samsung knew of the Defects and the serious safety risk they posed to consumers and has actively concealed them.  Plaintiffs reasonably relied upon Samsung's knowing, affirmative, and/or active and ongoing concealment.  For these reasons, Samsung is estopped from relying on any statute of limitations in defense of this action.

69.     Additionally, Samsung is estopped from raising any defense of laches due to its own conduct as alleged herein.

**COUNT ONE**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Asserted on Behalf of the State Sub-Classes**

70.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though set forth fully here.

71.     The Refrigerators owned by Plaintiffs and Class Members were defectively designed and manufactured and pose serious and immediate safety risks to consumers and the public.

72.     The Defects exist at the point of sale of the Refrigerators.

73.     The Defects place consumers and the public at serious risk for their own safety when the Refrigerators are used in consumers' homes.

74.     At all times relevant hereto, Samsung was under a duty imposed by law requiring that a manufacturer or seller's product be reasonably fit for the ordinary purposes for which the product is used, and that the product be acceptable in trade for the product description. This implied warranty of merchantability is part of the basis for the bargain between Samsung, on the one hand, and Plaintiffs and Class Members, on the other.

75.     Notwithstanding that duty, at the time of delivery, Samsung breached the implied warranty of merchantability in that the Refrigerators were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used (safely storing food and other perishables in a residential setting), and failed to conform to the standard performance of like products used in the trade.

76.     Samsung knew or should have known that the Refrigerators pose a safety risk and are defective and knew or should have known that selling the Refrigerators to Plaintiffs and Class Members breached the implied warranty of merchantability.

77.     As a direct and proximate result of Samsung's breach of the implied warranty of merchantability, Plaintiffs and Class Members bought the Refrigerators without knowledge of the Defects or their serious safety risks.

78.     As a direct and proximate result of Samsung's breach of the implied warranty of merchantability, Plaintiffs and Class Members purchased unsafe products which could not be used for their intended purpose of storing food and other consumable goods at a safe temperature.

79.     As a direct and proximate result of Samsung's breach of the implied warranty of merchantability, Plaintiffs and Class Members have suffered damages and did not receive the benefit of their bargain.

80.     Samsung was unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of repair, replacement, retrofit, or a recall.

81.     Furthermore, warranty disclaimers are unenforceable where the terms are inconspicuous and the consumer did not know about their existence.

82.     The Uniform Commercial Code provides that "negation or limitation is inoperative to the extent that such construction is unreasonable." *E.g.*, Cal. Com. Code § 2316(1); NPa.C.S.A. § 2316(a). Samsung never required consumers to acknowledge acceptance or receipt of the purported limitation on warranties. Accordingly, it is unreasonable to limit Plaintiffs and the Class Members' warranties without adequate notice of the limitation.

83.     Samsung is estopped from claiming as a defense the limitation on implied warranties as it exists in its warranty to consumers as the limitation is unconscionable.

84.     The defectively designed Refrigerators purchased by Plaintiffs and all other Class Members are unfit for their intended and ordinary purposes because they are prone to failure when operated as instructed and intended by Samsung.

85.     As a direct and proximate result of Samsung's breach of the implied warranty of merchantability, Plaintiffs and all the Class Members have suffered loss.

**COUNT TWO**
**BREACH OF WARRANTY UNDER**
**THE SONG BEVERLY CONSUMER WARRANTY ACT**
**Asserted on Behalf of the California State Sub-Class**

86. Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though set forth fully here.

87. The Refrigerators are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

88. Samsung is a manufacturer within the meaning of Cal. Civ. Code § 1791(j).

89. Plaintiff Jordan and California Sub-Class members are "buyers" within the meaning of Cal. Civ. Code. § 1791(b).

90. By operation of law, every Refrigerator sold within California included an implied warranty that the goods are merchantable. Cal. Civ. Code. § 1792.

91. The Defect is latent and was present at the time of the sale, and therefore the Refrigerators were not merchantable at the time of the sale. Samsung therefore breached these implied warranties by selling Refrigerators that were not fit for ordinary use and that were not of merchantable quality.

92. Had Plaintiff Jordan and the California Sub-Class members known about Defect at the time of sale, they would not have bought the Refrigerators, or they would have purchased the Refrigerators at a lower price.

93. As a direct and proximate result of Samsung's breach of its implied warranties, Plaintiff Jordan and the California Sub-Class members have been damaged in an amount to be proven at trial.

## COUNT THREE
## BREACH OF EXPRESS WARRANTY
### Asserted on Behalf of the State Sub-Classes

94.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though set forth fully here.

95.     Samsung is and was at all times relevant a merchant with respect to refrigerators.

96.     As fully pled above, Samsung had knowledge of the Defects alleged herein and that they pose serious safety risks to consumers like Plaintiffs and Class Members.

97.     Despite that knowledge, at all times relevant, Samsung expressly warranted in writing that its Refrigerators were "warranted by SAMSUNG against manufacturing defects in materials and workmanship."

98.     In its warranty to customers, Samsung also warrants in writing that it provides the following warranties: one year parts and labor; two years ice maker; five years sealed system coverage; and ten years compressor coverage.

99.     By selling Refrigerators containing the Defects to consumers like Plaintiffs and Class Members after it gained knowledge of the Defects, Samsung breached its express warranty to provide Refrigerators free from defects.

100.    Samsung also breached its express warranty to repair and correct material defects or component malfunctions in its Refrigerators when it failed to do so despite knowledge of the Defects and despite knowledge of alternative designs, alternative materials, and options for retrofits.

101.    Samsung has not made repairs correcting such material defects or component malfunctions in its Refrigerators.

102.     The limited warranty of repair for the Refrigerators fails in its essential purpose because the contractual remedy cannot make Plaintiffs and Class Members whole and because Samsung has refused to provide the promised remedies within a reasonable time.

103.     In addition, at the time Samsung warranted and sold the Refrigerators, it knew that the Refrigerators did not conform to the warranties and were inherently defective, and Samsung wrongfully and fraudulently misrepresented and concealed material facts regarding its Refrigerators.

104.     Accordingly, Plaintiffs and Class Members are not limited to the limited warranty of "repair" and Plaintiffs and Class Members seek all remedies allowed by law.

105.     Samsung knew that Plaintiffs' Refrigerators malfunctioned but failed to provide defect-free Refrigerators to Plaintiffs or Class Members when their refrigerators failed for free or to provide an adequate retrofit to remedy the Refrigerators.

106.     Samsung was provided with notice and has been on notice of the Defects and of its breach of express written warranties through its own internal and external testing as well as hundreds or thousands of consumer warranty claims reporting malfunctions in the Refrigerators, and customer complaints, yet it failed to repair, replace, or retrofit the Refrigerators to ensure they were free of materials defects or component malfunctions as Samsung promised.

107.     As a direct and proximate result of Samsung's breach of its express warranty, Plaintiffs and Class Members have suffered damages.

## COUNT FOUR
### VIOLATIONS OF MAGNUSON-MOSS ACT
### (15 U.S.C. §§ 2301-2312)–WRITTEN WARRANTY
### Asserted on Behalf of the State Sub-Classes

108.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though set forth fully here.

-23-

109.     Refrigerators are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

110.     Plaintiffs and Class Members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

111.     Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

112.     Samsung provided Plaintiffs and Class members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6).

113.     In its capacity as warrantor, and based on the described conduct, any attempts by Samsung to limit the express warranties in a manner that would exclude coverage of the defective Refrigerators is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Refrigerators is null and void.

114.     All jurisdictional prerequisites have been satisfied.

115.     By Samsung's conduct, including Samsung's knowledge of the defective Refrigerators and their action, and inaction, in the face of that knowledge, Samsung has failed to comply with its obligations under its written and implied promises, warranties, and representations.

116.     As a result of Samsung's breach of express warranties, Plaintiffs and Class Members have a right to revoke their acceptance of the Refrigerators, obtain damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C. § 2310.

**COUNT FIVE**
**VIOLATIONS OF MAGNUSON-MOSS ACT**
**(15 U.S.C. § § 2301-2312)—IMPLIED WARRANTY**
**Asserted on Behalf of the State Sub-Classes**

117.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though set forth fully here.

118.    Refrigerators are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

119.    Plaintiffs and Class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

120.    Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

121.    Samsung provided Plaintiffs and Class members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

122.    In its capacity as warrantor and by the described conduct, any attempt by Samsung to limit the implied warranties to exclude coverage of the defective Refrigerators is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Refrigerators is void.

123.    All jurisdictional prerequisites have been satisfied.

124.    By Samsung's conduct as described herein, including Samsung's knowledge of the defective Refrigerators and its action, and inaction, in the face of that knowledge, Samsung has failed to comply with its obligations under their written and implied promises, warranties, and representations.

125.    As a result of Samsung's breach of implied warranties, Plaintiffs and Class members have a right to revoke their acceptance of the Refrigerators, obtain damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C. § 2310.

### COUNT SIX
### UNJUST ENRICHMENT
### Asserted on Behalf of the State Sub-Classes

126.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

127.    Samsung received proceeds from its intentional sale of defective Refrigerators with French doors, which were purchased by Plaintiffs and Class Members for an amount far greater than the reasonable value of the defective Refrigerators.

128.    In exchange for the purchase price paid by Plaintiffs and Class Members, Samsung provided defective Refrigerators that are likely to fail within their useful lives and pose a material risk of failure.  There is no reasonable or acceptable rate for refrigerators to fail to store goods at a safe temperature.  These Defects render the Refrigerators unfit, and indeed, unsafe for their intended use.

129.    Plaintiffs and Class Members reasonably believed that the Refrigerators would function as advertised and warranted, and did not know, nor could have known, that the Refrigerators contained Defects at the time of purchase.

130.    Samsung knows of and appreciates the benefit conferred by Plaintiffs and Class Members and has retained that benefit despite its knowledge that the benefit is unjust.

131.    Under the circumstances, permitting Samsung to retain the proceeds and profits from the sales of the defective Refrigerators would be unjust.  Therefore, Samsung should be required to disgorge the unjust enrichment.

### COUNT SEVEN
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT,**
**N.J.S.A. 56:8-1, ET SEQ.**
**Asserted on Behalf of the Nationwide Class**

132.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though set forth fully here.

133.    The New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq*.) ("NJCFA") states, in relevant part:

> any unconscionable commercial practice, deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing concealment, suppression, or omission

of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise. . . ." N.J.S.A. 56:8-2.

134.   Plaintiffs and Class Members are consumers who purchased Refrigerators for personal, family, or household use.

135.   The advertisement, promotion, distribution, supply, or sale of the Refrigerators is a "sale or advertisement" of "merchandise" governed by the NJCFA.

136.   Before Plaintiffs' and Class Members' purchase of the Refrigerators,  Samsung violated the NJCFA by making:

> a.   uniform representations that its Refrigerators were of a particular standard, quality, or grade when they were and are not, and that they would perform as represented when they did not, as set forth above; and
>
> b.   false and/or misleading statements about the capacity and characteristics of the Refrigerators, as set forth above, that were unfair, deceptive, or otherwise fraudulent, had and continue to have the capacity to, and did, deceive the public and cause injury to Plaintiffs and Class Members.

137.   Samsung, in its communications with and disclosures to Plaintiffs and Class Members, intentionally concealed or otherwise failed to disclose that the Refrigerators included design Defects that pose a safety risk to consumers and render the Refrigerators substantially certain to fail before the end of their useful lives.

138.   Plaintiffs and Class Members reasonably expected that the Refrigerators would store food, drink, medicine, and other household goods at a safe temperature and would not pose a risk of failure, both before and at the time of purchase, and reasonably expected that Samsung did not design the Refrigerators to incorporate material Defects known to Samsung, and that the Refrigerators would perform as represented by Samsung in its promotional materials, service manuals, and owner's manual.  These representations and affirmations of fact made by Samsung, and the facts it concealed or failed to disclose, are material facts that were likely to deceive

reasonable consumers, and that reasonable consumers would, and did, rely on in deciding whether to purchase a Refrigerator.  Moreover, Samsung intended for consumers, including Plaintiffs and Class Members, to rely on these material facts.

139.    Samsung had exclusive knowledge that the Refrigerators had and have the Defects, which gave rise to a duty to disclose these facts.  Samsung breached that duty by failing to disclose these material facts.

140.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefits to consumers or competition under all circumstances.  There is a strong public interest in consumer appliance safety, as well as truthfully advertising and disclosing consumer appliance defects that pose a risk to property and life.

141.    Had Plaintiffs and Class Members known about the design Defects and accompanying safety risks, and/or that the Refrigerators did not operate as advertised, they would not have purchased the Refrigerators or would have paid less than they did for them.  As a direct and proximate result of Samsung's actions, Plaintiffs and Class Members have suffered ascertainable loss and other damages.

142.    New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Nationwide Class Members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

143.    New Jersey has a significant contact, or significant aggregation of contacts, to the claims asserted by each Plaintiff, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair. Samsung's headquarters and principal place of business are in Ridgefield Park, New Jersey.  Samsung also owns property and conducts substantial business in New Jersey, and therefore New Jersey has an interest in regulating Samsung's conduct

under New Jersey's laws.  Samsung's decision to reside in New Jersey and avail itself of New Jersey's laws render the application of New Jersey law to the claims at hand constitutionally permissible.

144.    The application of New Jersey's laws to the proposed Nationwide Class members is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiffs and the proposed Nationwide Class members, and New Jersey has a greater interest in applying its laws here than any other interested State.

**<u>COUNT NINE</u>**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)**

145.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

146.    This claim is brought on behalf of the California Subclass.

147.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

148.    Samsung's conduct, as described herein, was and is in violation of the UCL. Samsung's conduct violates the UCL by failing to disclose that the Refrigerators could not maintain an appropriately cold temperature for the storage of food and other perishable items.

149.    Samsung's misrepresentations and omissions alleged herein caused Plaintiff and the other Subclass members to make their purchases of Refrigerators.   Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased the Refrigerators, would not have purchased the Refrigerators, and/or would have purchased an alternative refrigerator that was able to maintain appropriately cold temperatures.

150.    Accordingly, Plaintiff and the other Subclass members have suffered injury in fact, including lost money or property, as a result of Samsung's misrepresentations and omissions.

151.     Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Samsung under Cal. Bus. & Prof. Code § 17200.

152.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Samsung from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the Subclass any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

## <u>COUNT VI</u>
## VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
## (CAL. CIV. CODE §§ 1750, *ET SEQ.*)

153.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

154.     This claim is brought on behalf of the California Subclass.

155.     California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

156.     The Refrigerators are "goods" as defined in Cal. Civ. Code § 1761(a).

157.     Plaintiff and the other Subclass members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other Subclass members, and Samsung are "persons" as defined in Cal. Civ. Code § 1761(c).

158.     As alleged above, Samsung made representations concerning the qualities of the Refrigerators that were misleading.

159.     In purchasing the Refrigerators, Plaintiff and the other Subclass members were deceived by Samsung's failure to disclose that the Refrigerators would not maintain appropriately cold temperatures for the storage of food and other perishables.

160.    Samsung's conduct, as described hereinabove, was and is in violation of the CLRA. Samsung' conduct violates at least the following enumerated CLRA provisions:

    i.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have.

    ii.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another.

    iii.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

161.    Plaintiff and the other Subclass members have suffered injury in fact and actual damages resulting from Samsung's material omissions and misrepresentations and sale of Refrigerators because they paid an inflated purchase price for the Refrigerators.

162.    Samsung knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the Refrigerators, and that the Refrigerators were not suitable for their intended use.

163.    The facts concealed and omitted by Samsung to Plaintiff and the other Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Refrigerators at the stated retail price.  Had Plaintiff and the other Subclass members known about the defective nature of the Refrigerators, they would not have purchased the Refrigerators or would not have paid the prices they paid.

164.    Plaintiff's and the other Subclass members' injuries were proximately caused by Samsung's unlawful and deceptive business practices.

165.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and members of the Subclass seek injunctive relief for Samsung' violations of the CLRA.

166.    While Plaintiff and the Subclass do not seek to recover damages under the CLRA in this initial Complaint, after mailing appropriate notice and demand in accordance with Civil

Code § 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

## COUNT TEN
## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)

167.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

168.    This claim is brought on behalf of the California Subclass.

169.    California Bus. & Prof. Code § 17500 states:  "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

170.    Samsung caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Samsung, to be untrue and misleading to consumers, including Plaintiff and the other Subclass members.

171.    Samsung has violated § 17500 because the misrepresentations and omissions regarding the functionality and reliability of the Refrigerators as set forth in this Complaint were material and likely to deceive a reasonable consumer.

172.    Plaintiff and the other Subclass members have suffered an injury in fact, including the loss of money or property, as a result of Samsung's unfair, unlawful, and/or deceptive practices. In purchasing their Refrigerators, Plaintiff and the other Subclass members relied on the

misrepresentations and/or omissions of Samsung with respect to the functionality and reliability of the Refrigerators.  Samsung's representations turned out not to be true because the Refrigerators were unreliable and failed to maintain appropriately cold temperatures for the storage of food and other perishables.  Had Plaintiff and the other Subclass members known this, they would not have purchased their Refrigerators and/or paid as much for them.  Accordingly, Plaintiff and the other Subclass members overpaid for their Refrigerators and did not receive the benefit of their bargain.

173.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Samsung's business.  Samsung's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

174.    Plaintiff, individually and on behalf of the other Subclass members, requests that this Court enter such orders or judgments as may be necessary to enjoin Samsung from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Subclass members any money Samsung acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT ELEVEN**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW**
**73 P.S. §§ 201-1 *ET SEQ.***
**(ON BEHALF OF PLAINTIFF SAGHY AND THE PENNSYLVANIA SUB-CLASS)**

175.    Plaintiff incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

176.    Plaintiff asserts this count on behalf of himself and members of the Pennsylvania Sub-Class.

177.    Plaintiff Saghy and members of the Pennsylvania Sub-Class are persons within the context of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* (hereinafter "PUTPCPL"), specifically § 201-2(2).

178.    Defendants are persons within the context of PUTPCPL, § 201-2(2).

179.    Defendants are engaged in trade and commerce within the context of PUTPCPL, § 201-2(3).

180.    Plaintiff Saghy and members of the Pennsylvania Sub-Class purchased Refrigerators for personal, family or household use.

181.    Defendants committed unfair and deceptive acts in the course of trade and commerce as described in this complaint in violation of PUTPCPL, § 201-2(4)(v), (vii), (ix) and (xxi), *inter alia*.

182.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Refrigerators with intent that Plaintiff and members of the Pennsylvania Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Refrigerators.

183.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff and members of the Pennsylvania Sub-Class the properties of the Refrigerators, including their ability to maintain appropriately cold temperatures for the storage of food and other perishables.

184.    Defendants actively suppressed the fact that Refrigerators failed to maintain appropriately cold temperatures for the storage of food and other perishables because of materials, workmanship, design and manufacture defects.

185.    In addition, Samsung has been unable to repair the Refrigerators to perform in the manner expected by consumers and/or have failed or refused to attempt to repair the Refrigerators under warranty.

186.    Samsung's deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff and members of the Pennsylvania Sub-Class were caused to expend sums of money in purchasing and later repairing their Refrigerators.  As reasonable consumers, Plaintiff and members of the Pennsylvania Sub-Class had no reasonable way to know that the Refrigerators were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on Samsung's representations, who alone possessed the knowledge as to the quality and characteristics of the Refrigerators.

187.    Defendants committed unfair and deceptive trade practices as described in this complaint.  Defendants repeatedly violated the PUTPCPL on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the ability of the Refrigerators to maintain appropriately cold temperatures for the storage of food and other perishables.

188.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff and members of the Pennsylvania Sub-Class purchased Refrigerators and sustained an ascertainable loss and financial harm.

189.    Plaintiff and members of the Pennsylvania Sub-Class experienced premature failure of their Refrigerators, diminution of the Refrigerators' value, increased repair and maintenance costs, cost of replacing spoiled food and other perishables, and incurred other substantial monetary damages and inconvenience.

190.     Samsung's conduct offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Refrigerator owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

191.     Plaintiff and members of the Pennsylvania Sub-Class demand judgment against Samsung for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Samsung from further deceptive acts and practices described in this complaint.

WHEREFORE, Plaintiffs Matthew Jordan and Lisa Saghy, individually and on behalf of the above defined Class, by and through counsel, pray the Court grant the following relief:

A.     An Order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     An Order appointing Plaintiffs Matthew Jordan and Lisa Saghy as representatives for the Class and appointing their counsel as lead counsel for the Class;

C.     An order awarding Plaintiffs Matthew Jordan and Lisa Saghy and all other Class Members damages in an amount to be determined at trial for the wrongful acts of Samsung;

D.     A Declaration that the Refrigerators are defective and pose a serious safety risk to consumers and the public;

E.     An Order enjoining Samsung, its agents, successors, employees, and other representatives from engaging in or continuing to engage in the manufacture,

marketing, and sale of the defective Refrigerators; requiring Samsung to issue

corrective actions including notification, recall, service bulletins, and fully-

covered replacement parts and labor, or replacement of the Refrigerators; and

requiring Samsung to preserve all evidence relevant to this lawsuit and notify

Refrigerator owners with whom it comes in contact of the pendency of this and

related litigation;

F.     Nominal damages as authorized by law;

G.     Restitution as authorized by law;

H.     Punitive damages as authorized by law;

I.     Payment to the Class of all damages associated with the replacement of the

defective products and parts, in an amount to be proven at trial;

J.     An order awarding attorney's fees pursuant to applicable Federal and State law;

K.     Interest as provided by law, including but not limited to pre judgment and post-

judgment interest as provided by rule or statute; and

L.     Any and all other and further relief as this Court deems just, equitable, or proper.

## **<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury on all counts so triable.

Dated: May 13, 2022                    Respectfully submitted,

 */s/ Donald A. Ecklund*
James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
973.994.1700

Jonathan D. Selbin
Jason L. Lichtman
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th fl.
New York, NY 10013-1413
212.355.9500

*Attorneys for Plaintiffs and the Proposed Classes*