UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST. ROOM 4066**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

August 15, 2023

VIA ECF

### LETTER ORDER

Re:   JORDAN et al v. SAMSUNG ELECTRONICS AMERICA, INC. et al
     Civil Action No. 22-02828

Dear Litigants:

Before the Court is Defendants' Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co., Ltd. ("SEC," collectively "Defendants"),[1] Motion to Dismiss the First Amended Complaint (the "FAC"), ECF No. 12, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). ECF No. 17. Plaintiffs oppose the Motion. ECF No. 22. For the reasons explained below, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**[2]

This putative class action stems from an alleged defect in the Defendants' refrigerators that make them unable to fulfill their primary intended purpose: to store food and other perishable items at a temperature that keeps them safe for human consumption. See generally, FAC. Plaintiffs allege that temperature irregularities, ice buildup, leakage, icemaker malfunctions, and noises are all symptoms of a defect in the evaporators and their failure to "regulate adequately the internal environment of the Refrigerators." Id. ¶ 1, 148. The FAC covers a range of models, but the refrigerators at issue generally have double French doors and a bottom pull-out freezer. Id. ¶ 2. Customers could not have been aware of the defects before purchasing since the defects and their symptoms do not become apparent until the refrigerator is installed and in use. Id. ¶ 99. Each named Plaintiff has experienced one or more of the defects that have rendered their refrigerators

---

[1] SEC is a South Korean multinational corporation in Seoul, South Korea that manufactures a multitude of electronic devices for both personal and professional use, including cell phones, laptops, tablets, and televisions. Samsung manufactures and sells home appliances, including refrigerators, dishwashers, ovens, microwaves, washers, and dryers. Samsung Electronics America, Inc. SEA is Samsung's North American subsidiary headquartered in Ridgefield Park, New Jersey. SEA is representative of SEC regarding manufacturing and warranties of products sold and distributed throughout the United States. First Amended Complaint ¶¶ 88, 90, 92.

[2] These facts are principally drawn from the FAC, and the exhibits attached thereto. The Court will also consider the warranties submitted by the Defendants as Plaintiffs have "explicitly relied upon" them. Doe v. Princeton Univ., 30 F.4th 335, 342 (3d Cir. 2022) (quoting Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020)).

unreliable at best, and unsafe and unusable at worst. Id. ¶¶ 98–99. When customers sought assistance, repair, or refund from Samsung, the company was uncooperative and refused to rectify the issues. Id. ¶ 102.

The refrigerators include an express warranty. Id. ¶¶ 97, 102. This warranty includes a one-year factory warranty against manufacturing defects, materials, and workmanship; five years against defects in the sealed system; and 10 years against defects in the compressor. Id. ¶ 145.[3] Plaintiffs allege that each of the malfunctions described in the FAC should be covered under Samsung's express warranty, but that "Samsung routinely denies warranty claims based upon the alleged defect." Id. ¶ 102.

Defendants received hundreds of complaints through the Consumer Product Safety Commission ("CPSC") for over two years regarding the defects. Id. ¶¶ 106, 109. Plaintiffs allege that the sample complaints included in the FAC are a small fraction of the mountain of evidence Samsung possessed, suggesting there was a structural, manufacturing defect with their refrigerators. Id. ¶¶ 105, 106, 108, 109. The sample complaints reference the same physical manifestations of the defects that the named Plaintiffs describe. Id. ¶ 107. Samsung's only public acknowledgement of the defect was Service Bulletin ASC20171005001 issued on October 5, 2017; however, the memo only references the "[f]an noise that stops when the door is open, or FF section not cooling due to stuck fan (22 E or C), and/or water pooling under the crisper drawers." Id. ¶ 108. Samsung offered no relief, credit, or assistance to its customers affected by the issues and gave rudimentary suggestions for repair. Id. ¶ 108. Defendants also did not address the widespread temperature irregularities and subsequent food spoilage, the most common symptom of the defect, despite the fact that 62 of the CPSC complaints alleged food poisoning due to the defect. Id. ¶¶ 106, 109.

Further, the Plaintiffs allege that Defendants knowingly concealed the defects and continued to advertise and sell the faulty refrigerators, making significant profits by selling them for more than what they were worth. Id. ¶¶ 3, 182. The FAC also asserts that the Defendants had a responsibility to demonstrate transparency and accuracy regarding the capabilities of its products, and the Plaintiffs "reasonably relied" on Samsung's descriptions and representations of the capabilities of their refrigerators when purchasing. Id. ¶¶ 132, 146. Plaintiffs allege that had they known of the faultiness of the refrigerators and the risks of using a defective appliance, they "would not have purchased the Refrigerators, would have paid substantially less for their Refrigerators than they paid, and/or would have removed them from their homes before their temperature control functionality failed." Id. ¶ 117.

---

[3] The warranties for Plaintiffs' refrigerators limit: (i) implied warranties to one year; and (ii) express warranties to one year, except as to the "Sealed Refrigeration System" and the "Digital Invertor Compressor," which have five and ten-year express warranties, respectively. Ryerson Cert., Exs. 1-8, ECF Nos. 17.3–17.10. The "Sealed Refrigeration System" includes the "Compressor, Evaporator, Condenser, Drier, and Connecting Tubing[.]" Id. The warranties also provide that: "YOUR SOLE AND EXCLUSIVE REMEDY IS PRODUCT REPAIR, PRODUCT REPLACEMENT, OR REFUND OF THE PURCHASE PRICE AT SAMSUNG'S OPTION, AS PROVIDED IN THIS LIMITED WARRANTY." Id.

### 1. Proposed Class Representatives

Shirley Crawford is a resident of Marianna, Arkansas. FAC. ¶ 5. She purchased a Samsung refrigerator (Model #RF263BEAFSG/AA) from Sears in January 2019 for approximately $2,000. Id. ¶¶ 6, 8. A few days after receiving the refrigerator, Ms. Crawford noticed food spoiling quicker than usual, resulting from the irregularly high temperature inside the refrigerator. Also, the refrigerator began making loud noises, and the icemaker ceased working properly. Id. ¶ 10. A technician came to Ms. Crawford's home to repair the "common" issue but was unable to; Samsung told Ms. Crawford they would send another technician to look at the issue but has not sent anyone. Id. ¶¶ 11, 12.

Matthew Jordan is a resident of Laguna Hills, California. Id. ¶ 14. He purchased a Samsung refrigerator (Model #RS22T5201SG/AA) from Home Depot on June 29, 2020, for $1,298.00. Id. ¶¶ 15, 17. After owning and using the refrigerator for a few months, Mr. Jordan noticed temperature irregularities; the bottom of the fridge was too cold, while the top was too hot. Id. ¶ 19. A technician visited Mr. Jordan's home and replaced the system board on January 14, 2021, noting physical damage (scorch marks) on the back of the fridge. The issue remains unresolved, and the Defendants have otherwise refused to replace or repair Mr. Jordan's refrigerator. Id. ¶ 21.

Melissa Alejandro is a resident of Manteca, California. Id. ¶ 22. She purchased a Samsung refrigerator (Model #RF265BEAESR/AA) from Home Depot on August 19, 2019, for $2,197.80. Id. ¶¶ 23, 25. Like Mr. Jordan, the defects became apparent to Ms. Alejandro a few months after receipt of the refrigerator. She noticed liquid leaking from the refrigerator and temperature irregularity; the liquid from the refrigerator caused her to slip and fall in her home. Id. ¶ 27, 33. Ms. Alejandro sustained bruises from the fall and claims that tingling sensations have persisted in her knee, elbow, and wrist since. Id. ¶ 33. In August 2020, the icemaker stopped functioning and began leaking. Id. ¶ 31. In March 2022, a technician visiting Ms. Alejandro's home identified the issue as ice buildup but could not repair the problem. Id. ¶ 28. After the visit, Ms. Alejandro purchased a replacement Samsung refrigerator from Lowe's on May 05, 2022 (Model #RS27T5561SR). Id. ¶ 34. The replacement refrigerator has since displayed the same problems as the original regarding ice buildup, irregular temperatures, and the defective icemaker. Id. ¶ 35.

Nicole Sobers is a resident of Sunrise, Florida. Id. ¶ 37. She purchased a Samsung refrigerator in March of 2019 from BrandsMart USA for approximately $2,000. Id. ¶ 38, 40. Again, after a few months of usage, Ms. Sobers noticed food spoiling and freezing from temperature fluctuation and irregularity, as well as water leaking in and around the fridge. Id. ¶ 42. On three separate visits to her home, technicians could not repair the issues. Id. ¶ 43.

Janice Butler is a resident of Rochester, New York. Id. ¶ 45. She purchased a Samsung refrigerator (Model #RF260BEAESR/AA) in February 2020 from Lowe's for over $1,000. Id. ¶ 46, 48. Shortly after purchase, the icemaker began malfunctioning. Id. ¶ 50. In June 2022, the temperatures in her fridge became unsafely high and food began to spoil. Id. ¶ 51. During this time, Ms. Butler could not use her refrigerator to store food while undergoing surgery and treatment for a brain tumor. Id. ¶ 52. Upon visiting her home, a technician immediately identified

the problems with her appliance since it was "so common among Samsung refrigerators." Id. ¶ 53. The technician was able to repair the refrigerator and it functioned properly until recently, when the temperature irregularities returned. Id. ¶ 54.

Pauline Dion is a resident of Rensselaerville, New York. Id. ¶ 56. She purchased a Samsung refrigerator (Model #RF2T5001SR/AA) on September 17, 2022, from Home Depot for $1,700. Id. ¶¶ 57, 59. Within a day of use, the temperature in the refrigerator became too high and food began to spoil. Id. ¶ 61. Ms. Dion attempted to reset the fridge which did not resolve the problem; a technician was also unable to fix the appliance. Id. ¶¶ 62, 64. She paid a third party to remove and replace the refrigerator and received a refund from Defendants. Id. ¶¶ 67–68.

Lisa Saghy is a resident of Gettysburg, Pennsylvania. Id. ¶ 70. She purchased a Samsung refrigerator (Model #RF263TEAESG/AA) on December 10, 2017, from Lowe's for $2,256.71. Id. ¶ 71, 73. In January 2022, the temperature in the refrigerator began fluctuating irregularly and ice formed on the back panel. Id. ¶ 75. In March 2022, a technician found ice buildup in the pockets of the cooling panel of the refrigerator and explained that the cooling panel was "totally blown" and that the compressor did not work. The technician was unable to fix the issue but recognized that the defect was known to Samsung and told Ms. Saghy that it "cannot be fixed." Id. ¶ 76. During this time, Ms. Saghy's father was in hospice care and Ms. Saghy could not store his needed medicine in the refrigerator since the temperature was so irregular. Ms. Saghy expressed her concerns to Samsung and asked for further repair, but Samsung "did not help remedy this dangerous problem, nor did they seem to care at all about this untenable situation." Id. ¶ 77. Ms. Saghy's father passed away a week later; Samsung refused to exchange or refund her because her refrigerator was out of warranty and suspended her case. Id. ¶¶ 77, 78.

Richard Angemi is a resident of Holliday, Texas. Id. ¶ 79. He purchased a Samsung refrigerator (Model #RF20HFENBBC/AA) in July 2016 from Aaron's in Wichita Falls, Texas for approximately $1,400. Id. ¶¶ 80, 82. After two years of usage, Mr. Angemi noticed ice buildup, temperature irregularities, food spoilage, and leakage. Id. ¶ 84. Mr. Angemi's solution to reset the fridge worked temporarily, but the problems consistently returned and sometimes, the refrigerator stopped working entirely. Id. ¶ 85. In 2018, Mr. Angemi replaced the refrigerator. Id. ¶ 86.

### 2. Procedural history

On May 13, 2022, Plaintiffs filed their initial Complaint against the Defendants. ECF No. 1. After a joint stipulation by the parties and with permission from the Court, Plaintiffs filed the FAC on November 16, 2022. ECF Nos. 7-9, 12. The FAC asserts three claims under New Jersey law on behalf of the nationwide class: (1) breach of express warranty, (2) breach of implied warranty, (3) and a violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq., ("NJCFA"). FAC ¶¶ 136-201.

Plaintiffs also allege alternative classes and sets of claims based on each Plaintiff's home state's express and implied warranty law, and respective consumer fraud statutes.[4] ¶¶ 202-390. The instant Motion followed.

---

[4] The Arkansas Deceptive Trade Practice Act, Ark. Code Ann. § 4-88-101, et seq.) ("ADTPA"); The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA"); California's Unfair Competition Law

## II. LEGAL STANDARD

### 1. Motion to Dismiss Under Rule 12(b)(6)

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. ANALYSIS

As a preliminary matter, the Defendants argue that the nationwide class's claims under New Jersey law should be dismissed because the named Plaintiffs have not alleged any connection to the state except the SEC and SEA headquarters. The Court "defers consideration of standing to pursue claims on behalf of absent class members of the nationwide class." In re FieldTurf Artificial Turf Mktg. & Sales Pracs. Litig., No. CV317MD2779, 2018 WL 4188459, at *8 (D.N.J. Aug. 31, 2018). Because "the question of whether Plaintiffs have standing to bring claims for violations of laws of other states only arises if the Court certifies the nationwide class," this inquiry is premature. Id.

The Court also declines to resolve the choice of law issue at this early stage. "[C]hoice of law analysis has routinely been found to be premature at the motion to dismiss phase of a class action lawsuit," because a choice of law analysis is fact-intensive and requires an inquiry on a claim-by-claim basis. In re Liquid Aluminum Sulfate Antitrust Litig., No. 16-2687, 2017 WL 3131977, at *16 (D.N.J. July 20, 2017).[5] The parties dispute whether New Jersey law should apply to the nationwide class's common law and consumer fraud claims where there is no named Plaintiff based in the state, but the issues have not been sufficiently briefed.[6] The Court will analyze the nationwide class's common law claims under New Jersey Law for the purpose of this Motion.[7]

---

("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq. ("CFAL"); The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq("FDUTPA"); The New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, 350 ("NYGBL").

[5] To decide what substantive law should apply, a federal court sitting in diversity must apply the choice-of-law rules of the forum state. See Klaxon Co. v. Stentar Elec. Mfg. Co., 313 U.S. 487, 496 (1941). New Jersey has implemented the "most significant relationship" test. Maniscalco v. Brother Int'l Corp., 709 F.3d 202, 210 (3d Cir. 2013). A court must determine: (1) "whether an actual conflict of law exists," and if so, (2) "which stale has the 'most significant relationship' to the claim by "weighing the factors set forth in the Restatement [ (Second) of Conflict of Laws]' "that corresponds with plaintiff's cause of action. Arlandson v. Hartz Mt. Corp., 792 F.Supp.2d 691, 699 (D.N.J. 2011).

[6] For example, the Defendants suggest conflicts between New Jersey law and the law of Plaintiffs' home states through string cites, rather than fully explaining what each conflict is claim by claim, and how it would alter the outcome of the case. Def. Mem. at 14-15.

[7] The Court acknowledges the Defendants' arguments concerning the lack of connection to the state of New Jersey. However, the Court directs the Defendants to renew these arguments with more fulsome briefing on the purported conflicts of law, and with the benefit of fact discovery.

The Court will also address Defendants arguments regarding whether the FAC sufficiently alleges claims pursuant to the common requirements of each of the state consumer fraud claims at issue.

### 1. Failure to State a Claim

Defendants argue that all the claims in the FAC should be dismissed because Plaintiffs fail to allege an actionable defect with the refrigerators at issue. Specifically, the Defendants contend that although Plaintiffs have alleged temperature irregularities in their refrigerators, the FAC does not specify the part of the refrigerators that is defective. Def. Mem. at 10-12. The Court disagrees.

To allege an actionable defect, Plaintiffs must plead "sufficient colorable information to plausibly establish" what defect exists. See, e.g., McQueen v. BMW of N. Am., LLC, No. 12–6674, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013). The FAC not only alleges that each refrigerator fails "to maintain a temperature at which food can be safely stored," but specifies that the refrigerators' "evaporators fail to regulate adequately the internal environment of the Refrigerators." FAC ¶¶ 1, 98, 148. Although each named Plaintiff describes the manifestations of this alleged defect slightly differently,[8] the Court is satisfied that their allegations establish a common defect sufficient to survive a Motion to Dismiss.

The Defendants also argue that the FAC should be dismissed because Plaintiffs have failed to plead essential elements of each claim. The Court agrees in part and addresses each claim in turn.

### A. Common Law Warranty Claims

The Defendants argue that the express and implied warranty claims should be dismissed because not all Plaintiffs have not alleged "(i) a defect within the applicable, one-year warranty period, (ii) that they contacted [Defendants] within the warranty period to seek a remedy, or (iii) that coverage was refused."[9] Def. Mem. at 31. Plaintiffs counter that the one-year limitation is unconscionable. The Court agrees with Defendants in part.

Warranties typically require "the seller to perform certain acts, such as repair and replace defective parts, for a specified time period [but] does not cover repairs made after the applicable time has elapsed." Taylor v. BMW of N. Am., LLC, No. CV 20-1994 (KM)(JBC), 2021 WL 1186777, at *8 (D.N.J. Mar. 29, 2021) (internal quotation omitted). The parties do not appear to dispute that the applicable warranty is limited to one year, or that it required Plaintiffs to seek relief

---

[8] As described more fully at supra-Section I.1, each Plaintiff alleges malfunctions or issues with their refrigerators stemming from temperature irregularities. While some experienced leakage, others experienced ice buildup or food spoilage. The Defendants' argument that these are different problems ignores the explicit allegation that the refrigerators' evaporators are the common problem, regardless of whether the resulting temperatures were too warm, too cold, or simply inconsistent. While it appears there is a "split in authority as to the level of factual allegations necessary to plausibly plead a defect," this Court is satisfied that alleging the defect along with the effects of the defect is sufficient. See Wesley v. Samsung Elecs. Am., Inc., No. CV 20-18629, 2022 WL 16509541, at *4 (D.N.J. Oct. 28, 2022).

[9] The Defendants also argue that this claim should be dismissed because the Plaintiffs, at times, frame the alleged defect as a design defect, and the applicable warranty does not cover design defects. Def. Mem. at 28-29. The Court disagrees and finds this argument premature. See Coba v. Ford Motor Co., No. 12–1622, 2013 WL 244687, at *6 (D.N.J. Jan. 22, 2013); Davis v. BMW of N. Am., LLC, No. 19-CV-19650, 2022 WL 3646571, at *4 (D.N.J. Aug. 23, 2022) ("[I]t is "premature at this stage to dismiss Plaintiffs' express warranty claim on the grounds that it is based on defective design as opposed to defects in material or workmanship.").

from Defendants within that period.[10] However, while certain Plaintiffs allege that their refrigerators failed, some do not allege when they contacted Defendants concerning the alleged defect. For example, Plaintiff Butler noticed effects of the alleged defect—namely her icemaker malfunctioning—shortly after her purchase in February 2020 but did not specify when she contacted the Defendants concerning these issues. FAC ¶¶ 45–50. Based on her allegations that a technician serviced her refrigerator after the temperature irregularity became untenable in June 2022, id., it appears she did not contact Defendants within the one-year period. Other Plaintiffs did not make complaints about the alleged defect within the one-year period. See, e.g., FAC ¶¶ 70–78 (Plaintiff Saghy purchased her refrigerator in December 2017 but did not have issues until January 2022). Even resolving inferences in Plaintiffs' favor, these Plaintiffs have not alleged a defect complained about to the Defendants within the limited period.

Plaintiffs ask this Court to disregard the one-year limit because it is unconscionable.[11] Generally, "Plaintiffs may avoid the durational limits of Defendant[s'] warranty is by alleging facts sufficient to show that the warranty is unconscionable." In re Volkswagen Timing Chain Prod. Liab. Litig., No. CV 16-2765, 2017 WL 1902160, at *11 (D.N.J. May 8, 2017). To plead an unconscionable warranty provision, Plaintiffs must allege "1) unfairness in the formation of the contract, or procedural unconscionability, and 2) excessively disproportionate terms, or substantive unconscionability." In re Samsung DLP Television Class Action Litig., No. CIV. 07-2141, 2009 WL 3584352, at *5 (D.N.J. Oct. 27, 2009). Courts that have excused a warranty's time limit have found allegations of unequal bargaining power, such as a "preprinted" warranty, sufficient to allege procedural unconscionability. See e.g., In re Volkswagen, 2017 WL 1902160, at *11-12; In re Samsung, 2009 WL 3584352, at *5. Those Courts have also found allegations of the Defendant's knowledge of the defect sufficient to plead substantive unconscionability. See e.g., Id. Other Courts find that bald allegations of unequal bargaining power are insufficient to establish procedural unconscionability, and that "repairs made after the expiration of the warranty are not actionable even if the defendant had prior knowledge of the defect." Taylor, 2021 WL 1186777, at *10 (citing Dewey v. Volkwagen AG, 558 F. Supp. 2d 505, 201 (D.N.J. 2008)).[12] These Courts decline to find a time limit substantively unconscionable without allegations that "Defendants manipulated the [warranty] so that the alleged defects would emerge after the warranty period." Id. at *11.

This Court finds the latter reasoning persuasive. The FAC alleges that Defendants were "aware for years" that the failed to maintain safe temperatures and "concealed the safety risk from consumers while warranting that its products were free from defects." FAC ¶¶ 105–112, 149. The FAC also includes that the "[t]he symptoms of the Defect thus manifest only after the point of sale, both within and outside the warranty period." Id. ¶ 99. Additionally, Plaintiffs allege that

---

[10] Plaintiffs do not appear to contend that any other warranty applies other than the one-year warranty despite Defendants' alluding to that potential dispute in their motion. See Def. Mem. at 30-31.

[11] Plaintiffs also refer to an allegation, without providing authority, in the FAC that the implied warranty limitation is unenforceable because it was inconspicuous, but that argument is unavailing. The implied warranty was limited to one-year in all caps and under a bolded headline as required by New Jersey Law to be conspicuous. See Hillsborough Rare Coins, LLC v. ADT LLC, No. CV 16-916 (MLC), 2017 WL 1731695, at *9 (D.N.J. May 2, 2017).

[12] See also, e.g., Ponzio v. Mercedes-Benz USA, LLC, 447 F. Supp. 3d 194, 257 (D.N.J. 2020) ("[A]lleging that a defendant knew of a defect, and knew that defect would arise after the time limitations of a warranty, but concealed that information, without more, fails to establish unconscionability.") (emphasis in original).

"consumers are not afforded an opportunity to negotiate for more favorable terms in the warranty because of the parties' relative bargaining power." Id. ¶ 100-01.

Like in Taylor, Plaintiffs fail to provide supporting factual allegations suggesting unequal bargaining power at the time of each Plaintiff's purchase or that the Defendants actively manipulated the warranty to avoid its duties. See Taylor, 2021 WL 1186777, at *11. Instead, the FAC relies primarily on Defendants' superior knowledge regarding the alleged defect. Plaintiffs' allegations that most of the named Plaintiffs detected the alleged defect well within the warranty period contradict any claim of warranty manipulation by the Defendant.[13] See id. (Declining to find a durational limit unconscionable where in many instances "the alleged defect manifested itself, and Defendants serviced the [product's] issues, under the warranty"). Accordingly, the Court will dismiss the express and implied warranty claims of named Plaintiffs who did not allege that they sought repair, replacement, or refund from the Defendants within the one-year period.[14]

In contrast, Plaintiff Jordan, who repeatedly sought repair or refund within the warranty period but alleges that the Defendants refused to resolve the issues,[15] has sufficiently alleged breach of the express and implied warranties to survive dismissal. See FAC ¶¶ 14–21.[16]

### B.  Consumer Fraud Claims

Defendants argue that all of Plaintiff's state consumer fraud statutory claims fail because the Plaintiffs have not particularly alleged (1) that they relied on a statement by the Defendants when purchasing their refrigerators, and (2) that the Defendants had pre-sale knowledge of the alleged defect. The Court disagrees.[17]

Generally, to plead a violation of the NJCFA a plaintiff must allege "(1) an unlawful practice, (2) an 'ascertainable, loss'; and (3) 'a causal connection between the defendant's unlawful practice and the plaintiff's ascertainable loss.'" Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011). Additionally, when the claim is based on a knowing omission, Plaintiffs must allege

---

[13] For this reason, the Court rejects Plaintiff's similar assertion that the durational limit causes the warranty to fail in its essential purpose. "Plaintiffs may not invoke the [essential purpose] doctrine to void the durational limits of" the warranty. In re Caterpillar, 2015 WL 4591236, at *24. Plaintiffs' more appropriate claims concerning Defendants' alleged omission are their consumer fraud claims.

[14] Plaintiffs Saghy, and Angemi have not alleged a defect within the one-year period, while Plaintiffs Crawford, Butler, Sobers and Alejandro have not alleged that they contacted Defendants concerning the alleged Defect within the one-year period. Any future pleading must allege when named Plaintiffs contacted Defendants concerning the alleged defect.

[15] Defendants' arguments that the refrigerators were merchantable is unavailing, at least for Plaintiff Jordan. Specifically, Defendants argue that "[a]t best, these allegations suggest that Jordan experienced an issue in certain parts of his refrigerator, not that the whole refrigerator was unmerchantable." The Court finds that allegations that a refrigerator did not maintain a usable temperature throughout, sufficient to allege that the refrigerator is not fit for its intended purpose at this stage.

[16] Plaintiffs have not met the jurisdictional perquisite of 100 named plaintiffs to assert a Magnuson-Moss Warranty Act ("MMWA") claim, 15 U.S.C. § 2310(d)(3)(C). The Court is not convinced by Plaintiffs' argument that an MMWA claim brought as part of common-law warranty claims should be able to proceed under the Class Action Fairness Act ("CAFA"). See Kavon v. BMW of N. Am., LLC, 605 F. Supp. 3d 622, 631 (D.N.J. 2022) (concluding that since June 2020 every Court in this District has similarly held that "CAFA does not provide an alternative basis for jurisdiction in a MMWA class action with fewer than 100 named plaintiffs").

[17] The Court declines to reach Defendants' state-specific arguments until after a full choice-of-law analysis.

that the Defendants "(1) knowingly concealed (2) a material fact (3) with the intention that the consumer rely upon the concealment." Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 297 (D.N.J. 2009) (citation omitted).[18]

The parties do not dispute that Federal Rule of Procedure 9(b)'s heightened pleading requirements apply to a consumer protection claim to the extent it asserts fraudulent conduct by the defendant. Plaintiffs assert that their claims are based on Defendants' omissions, rather than any affirmative misrepresentations. Pl. Opp. at 33-34. While Plaintiffs need not specify "the time, place, and specific content of an omission as would a plaintiff in a false representation claim," Kennedy v. Samsung Elecs. Am., Inc., No. 14-4987, 2015 WL 2093938, at *3-4 (D.N.J. May 5, 2015) (citation and quotation marks omitted), to survive dismissal the FAC must "plausibly allege that the omission had some impact on [the] purchasing decision." In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig., No. CV 19-MD-2904, 2021 WL 5937742, at *27 (D.N.J. Dec. 16, 2021). The Court is satisfied that Defendants' alleged omission—that the refrigerators would not maintain an appropriate temperature throughout— impacted Plaintiffs' decision whether to buy the refrigerators. Plaintiffs' allegations that they would not have purchased refrigerators if they had known of the alleged defect, see id. ¶¶ 132, 261, 279, 299, 353, are sufficient to establish a material omission at this stage.

Plaintiffs also sufficiently allege Defendants' knowledge of the defect. Rule 9(b) permits "[m]alice, intent, knowledge, and other conditions of a person's mind" to be alleged generally. Fed. R. Civ. P. 9(b). The FAC includes that Defendants knew or should have known that Refrigerators were prone to not maintaining appropriately cold temperatures since at least 2017 because they issued a Service Bulletin concerning related malfunctions on October 5, 2017. FAC ¶¶ 105–108. Plaintiffs also allege that consumers submitted hundreds of complaints to the CPSC, and Defendants' own authorized technicians stated that Plaintiffs suffered from a well-known issue. Id. ¶¶ 5-87, 105–12. Taken together these allegations sufficiently establish Defendants pre-sale knowledge of the defect at this stage. Defendants may renew their arguments to the contrary after discovery.[19] Accordingly, the Court will not dismiss the state consumer fraud claims.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, ECF No. 17 is **GRANTED in part** and **DENIED in part**. Plaintiff Matthew Jordan's Express and Implied Warranty Claims may proceed, and each Plaintiff's consumer fraud claims may proceed.[20]

---

[18] The other potentially applicable consumer statutes have similar prima facie requirements. See e.g, Edwards v. Camden Operations, LLC, No. 1:17-CV-01054, 2018 WL 3478905, at *3 (W.D. Ark. July 19, 2018) (ADTPA); In re Arris Cable Modem Consumer Litig., No. 17-CV-01834-LHK, 2018 WL 288085, at *6 (N.D. Cal. Jan. 4, 20180) (UCL, CLRA, CFAL); Jackson v. Anheuser-Busch InBev SA/NV, LLC, No. 20-CV-23392, 2021 WL 3666312, at *11 (S.D. Fla. Aug. 18, 2021)(FDUTPA); Kuzian v. Electrolux Home Prod., Inc., 937 F. Supp. 2d 599, 616 (D.N.J. 2013) (NYGBL).

[19] The Court also declines to dismiss the consumer claims because of "group pleading" at this stage. The Court is satisfied that Plaintiffs have alleged that both Defendants are responsible for any omission of the defect because while SEC manufactured the refrigerators and SEA warranted them, both SEC and SEA marketed, distributed, and sold the refrigerators at issue. See FAC ¶¶ 88-92.

[20] Plaintiffs concede that the Implied Warranty of Merchantability under New York Law ("Count IV") and California Failure to Recall ("Count XII") claims should be dismissed with prejudice. Plaintiffs also concede that the Arkansas Deceptive Trade Practices Act ("Count VI") claim should be dismissed without prejudice. Plaintiffs have also

Plaintiffs may amend the Complaint within 30 days of this Order to cure any deficiencies identified herein.

**SO ORDERED.**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

conceded that their claims for injunctive relief should be dismissed without prejudice.  The Court so orders these resolutions.